UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| SOUTHWESTERN BELL MOBILE SYSTEMS, LLC. d/b/a CINGULAR WIRELESS,<br>    Plaintiff | 04-40004 |
| VS. | **COMPLAINT** |
| ERIC NESTLER, MARY ESSARY, TIMOTHY CLARK, MARC SEVIGNY and TIMOTHY ARNOLD, As they Are Now or Formerly the Members of and Constitute the Planning Board of the Town of Harvard, Worcester County, Massachusetts,<br>    Defendants | |

This action arises out of a decision of the Planning Board of the Town of Harvard, purportedly acting pursuant to its authority under Massachusetts General Laws, Chapter 40A and the Town of Harvard Protective (Zoning) By-Laws (hereinafter the "Bylaw"), to impermissibly condition the issuance of a special permit to co-locate on an existing wireless telecommunications tower and for related improvements and equipment necessary for the provision of personal wireless services ("Personal Wireless Services"), as that term is used and defined in the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. §332(c). This action is brought pursuant to 47 U.S.C. §332(c)(7)(B)(v).

A. PARTIES

1. The Plaintiff, Southwestern Bell Mobile Systems, LLC, d/b/a Cingular Wireless ("Cingular"), is a foreign limited liability company registered to do business in the Commonwealth of Massachusetts with a principal place of business in Massachusetts at 580

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

Main Street, Bolton, Worcester County, Massachusetts. Cingular is a provider of Personal Wireless Services.

2. The Defendants, Eric Nestler, of 31 Cruft Lane, Harvard, Worcester County, Massachusetts; Mary Essary, of 239 Stow Road, Harvard, Worcester County, Massachusetts; Timothy Clark, of 114 Bolton Road, Harvard, Worcester County, Massachusetts; Marc Sevigny, of 101 South Shaker Road, Harvard, Worcester County, Massachusetts; and Timothy Arnold, of 21 Glenview Drive, Harvard, Worcester County, Massachusetts, at all times material and relevant hereto were and/or are all the members of the Planning Board of the Town of Harvard, Worcester County, Massachusetts (the "Board"), sitting and acting pursuant to the authority granted to them under Massachusetts General Laws, Chapter 40A and the Bylaw.

## B. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically 47 U.S.C. § 332(c).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b), as the Defendants each reside in this District, and the events giving rise to this action occurred in this District.

## C. FACTS

5. On or about July 8, 2003, Cingular applied to the Board for a special permit pursuant to Sections 125-27, 125-38 and 125-46 of the Bylaw to co-locate a wireless communications facility on an existing wireless communications tower at 47 Poor Farm Road, Harvard, Massachusetts ("Locus").

6. The Board held public hearings on Cingular's Application on September 8, 2003, and October 20, 2003.

7.  On December 16, 2003, the Board filed a written decision ("Decision") with the Town Clerk of the Town of Harvard dated December 15, 2003, purporting to grant Cingular's application subject to conditions (the "Conditions"). A copy of the Decision, attested by the Town Clerk with whom the Decision was filed on December 16, 2003, is attached hereto, marked Exhibit A and incorporated herein by reference.

## COUNT I - 47 U.S.C. §332(c)(7)(B)(v)

8.  Cingular repeats and reavers the allegations contained in paragraphs 1 through 7 of this Complaint as fully as if restated verbatim in this paragraph.

9.  Cingular is a provider of Personal Wireless Services as that term is used and defined in the Act, 47 U.S.C. § 332(c)(7)(C).

10. The Act, 47 U.S.C. § 332(c)(7)(B), provides, in relevant part that:

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government or instrumentality thereof -

> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account, the nature and scope of such request.

(iii) Any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

11. The Act, 47 U.S.C. §332(c)(7)(B)(v), further provides:

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such application on an expedited basis . . .

12. The Application constitutes a request to place, construct, or modify Personal Wireless Service facilities within the meaning of the Act.

13. The Decision is inconsistent with the Act.

14. The Decision is inconsistent with the Act for the following reasons, *inter alia*:

(a) The Conditions in the Decision unreasonably discriminate among providers of functionally equivalent services, in violation of the Act;

(b) The Conditions in the Decision are not supported by substantial evidence contained in a written record, in violation of the Act;

(c) The Conditions in the Decision exceed the Board's authority under the Bylaw;

(d) The Conditions in the Decision prohibit or have the effect of prohibiting the provision of personal wireless services;

(e) Cingular's Application and proposed use of the existing tower and Locus comply with all of the applicable requirements of the Bylaw without the Conditions; and

(f) The Conditions contained in the Decision are unreasonable, arbitrary, capricious, whimsical and based on legally untenable grounds.

15. Cingular is adversely affected and aggrieved by the Decision.

WHEREFORE, Cingular, invoking the provisions of 47 U.S.C. § 332(c)(7)(B), demands this Honorable Court:

1. Grant Cingular expedited review of the matters set forth in this Complaint;

2. Determine and adjudge that the Conditions in the Decision are in violation of the provisions of the Act;

3. Order the Board to grant the Application and issue the Special Permit without the Conditions; and

4. Grant Cingular such other relief as justice, equity and the circumstances may require.

                          Respectfully submitted,
                          SOUTHWESTERN BELL MOBILE
                          SYSTEMS, LLC, d/b/a CINGULAR WIRELESS
                          The Plaintiff,
                          By its Attorneys,
                          D'AGOSTINE, LEVINE, PARRA & NETBURN, P.C.

                          By: _____
                          Louis N. Levine BBO #296880
                          F. Alex Parra BBO #390314
                          268 Main Street
                          Acton, Massachusetts 01720
                          (978) 263-7777
                          January 8, 2004

Civil\Cellular\Harvard 2003 Complaint - U.S. District Court

OFFICE OF THE
# HARVARD PLANNING BOARD

13 Ayer Road •                 • Harvard, Massachusetts 01451

EXHIBIT A



RECEIVED
'03 DEC 16 PM 5 02
TOWN OF HARVARD

DECEMBER 15, 2003

HARVARD PLANNING BOARD
NOTICE OF DECISION

**SOUTHWESTERN BELL MOBILE SYSTEMS, LLC
d/b/a Cingular Wireless**

**SPECIAL PERMIT: CO-LOCATION on a WIRELESS COMMUNICATIONS TOWER
Tower Owner: Sprint Spectrum LP**

**47 Poor Farm Road, Parcel 9/1.2
Site Owner: Andrew Coleman
47 Poor Farm Road, Harvard, Massachusetts 01451**

The Harvard Planning Board (the "Board") hereby **GRANTS** to Southwestern Bell Mobile Systems, LLC, d/b/a Cingular Wireless (the "Applicant"), a Special Permit (the "Permit"), under Sections 125-27 and 125-46, specifically, but not limited to, of the "Code of the Town of Harvard", the "Protective Bylaw", As Amended (the "Bylaw"), to co-locate on an existing wireless communications tower, at 47 Poor Farm Road, Map 9, Parcel 1.2 (the "Site"), and in agreement with the Town of Harvard Master Plan. The Application was submitted to the Town Clerk on July 8, 2003 . Notice of the Public Hearing (the "Hearing") was given postpaid and advertised in "The Harvard Post" on August 22 and 29, 2003.

The Application included:

- A check for $1,100.00.
- Harvard Planning Board Application form.
- Certified Abutters List form the Town of Harvard Board of Assessors, dated June 25, 2003.
- Authorization to Act as Applicant per Sprint Sites USA.
- Project Narrative.
- Section 125-27(E) Application Review, including set of four (4) plans, Roadway Visibility Study, set of ten (10) photographs.
- Donald L. Haes, Jr., PhD., CHP,'s proposed installation of wireless services antennas.
- USA FCC Radio Station Authorization, through February 9, 2006.
- Three (3) coverage plots.
- EBI Consultants' Phase I Environmental Site Assessment.

- Sprint's Application re Tower (26 pages).

The Hearing was opened on September 8, and continued to and closed on October 20, 2003.

Deliberations were begun and concluded at the Board's regular meeting of December 15, 2003. Five (5) Planning Board Members were in attendance for all parts of the hearing: Timothy Clark, Chairman, Timothy Arnold, Vice Chairman, Mary Essary, Clerk, Marc Sevigny, and Eric Nestler.

## Testimony

The following, part of which supplemented the Application, was entered into the record during the Hearing process:

1. Antennas will be located at the second position, which is at eighty-eight (88) feet on the tower.
2. Site access will be improved.
3. Two (2) cabinets, five (5) feet tall by thirty (30) inches by thirty (30) inches, will be within approved area, to the rear, connection being through tower to antennas.
4. One or two (2) maintenance visits will be made per month.
5. A GPS antenna will be at the base, on the ice bridge, within the compound, for receiving 911 calls.
6. Motion-sensor light will be directly over equipment and aimed downward toward equipment.
7. There will be no on-site generator.
8. Site is planned to be a companion site with Porter Road, Littleton and Spectacle Pond Road, Lancaster towers.
9. Site, in addition to Old Shirley Road site, is necessary to provide customer service. (Server is also on Carlson Tower, Oak Hill Road.) Overall current in-town coverage by Applicant is poor.

9\. Ice bridge will connect equipment to tower.

10. Discussion of spatial or polar-diversity antennas as an option for antenna configuration occurred.
11. Possibility of additional carriers locating on this tower was discussed.
12. Additional requested coverage maps were not submitted.
13. Applicant worked with Fire Department to facilitate possible future installations for emergency services.
14. Tower has yet to be built.
15. Antennas will be located within the camouflage "branches", so as not to compromise the tower's stealth design.
16. Ground equipment will be painted "Charleston green", which is a mixture of fifty percent (50%) green paint and fifty percent (50%) black paint.
17. Board of Health had no comment regarding the Application.
18. Public Works Department felt that there would be little or no impact upon it as a result of this co-location.

19. Board consultant submitted "North Harvard Topography" map.
20, Board consultant submitted packet of input/history of issues.

## Findings

1. The Board finds that within the wireless communications overlay district "there are no existing, approved or proposed wireless communications towers or other structures which are reasonably available to accommodate the wireless communications equipment planned for the proposed co-location in order to provide the service which this proposed facility would provide" in accordance with Section 125-27D.(2)(a) of the Bylaw.
2. The Applicant showed data found credible by the Board indicating existing coverage to be below the "marginal" signal strength in the area that would be covered by the proposed tower.
3. Based upon the above information and analysis, the Board finds that antennas at eighty-eight (88) feet can meet the Applicant's needs. The Bylaw strongly encourages co-location on existing communications towers. The proposed location also satisfies an important need of the Applicant. Co-location at this site is therefore strongly supported. The Board finds that the Applicant has demonstrated to its satisfaction that co-location at eight-eight (88) feet on this tower, will not have a greater detrimental impact upon the view shed, within the meaning of Section 125-27E.(12) of the Bylaw.
4. The Applicant will locate its antennas within the "branches" of the existing "tree tower" in such a way as to hide the antennas from view. The view shed analysis and the photographic evidence obtained during the original permitting of the tower demonstrated that the tower and its accessory structures are able to accommodate multiple users to the extent it can be done without detrimental impact on the view shed. The tower owner has agreed to permit other service providers to co-locate on the tower with commercially reasonable terms, as required by Bylaw Section 125-27D.(2)©.
5. The Applicant has demonstrated to the satisfaction of the Board that the proposed co-location is critical to the provision of services in accordance with Bylaw Section 125-27D.(d)(2).
6. The existing tower is set back by at least the height of the tower from all property lines in accordance with Bylaw Section 125-27D.(2)(f)(1). The Applicant proposes no change in the location or height of the existing tower.
7. A reduced setback from one residence was addressed through a Zoning Board of Appeals Variance process, with the Variance filed with the Town Clerk on December 17, 2001.
8. The Applicant proposes no change to the existing approved driveway location or design. The Board finds that the proposed access conforms to applicable Bylaw Section 125-27D.(2)(g).
8. The Applicant's plan shows that the utilities will run within the existing utility easement, and that there will be no additional removal of trees

    9. The granting of a Special Permit for co-location on the wireless facility will be in compliance with Bylaw Section 125-46C.(1) and:

        a. will not result in substantial increase of volume or rate of surface water runoff to neighboring properties and streets, will not result in substantial danger of pollution or contamination of the ground water supply, a ground water absorption area, a well, pond, stream, watercourse, W district, or inland wetland. All surface water runoff resulting from the construction of the facility will be retained within the lot in which it originates.

        b. will result in no substantial increase in traffic, compared to refusal of the permit, on any residential street where the premises have access.

        c. will be in harmony with the general purpose and intent of the Bylaw except as noted in these findings, including each purpose stated in the Purpose section, which is pertinent to the particular Application.

10. The Applicant does not propose any lighting other than emergency lighting, which complies with Section 125-27D.(2)(k).
11. In accordance with Bylaw Section 125-27D.(2)(l), the tower and its accessory buildings have been designed to be as unobtrusive as possible, with all utility lines serving them installed underground and the use of the best available technology to minimize the noise emitted from the site.
12. A chain link fence for security surrounds the tower and equipment compound will match other painted elements. The proposal complies with Bylaw Section 125-27D.(2)(m), requiring that the tower be fenced so as to control access to the facility and that the fence be as unobtrusive as possible.
13. The Applicant's proposal includes signage required by Section 125-27D.(2)(n), namely, an announcement sign, a no trespassing sign, and a sign giving a phone number where the owner/operator can be reached on a twenty-four (24) hour basis. No other signs will be permitted.
14. The Application, plans, supporting documentation, and testimony form the support of the following description of the specific use and intensity of use for the proposed facility:

    a. The antenna support structure on the monopole is located at eighty-eight (88) feet above ground level.

    b. The antennas are oriented in three (3) sectors and are located inside the branches of a "tree" style monopole on a ten (10) foot diameter platform on the monopole.

    c. Each sector comprises three (3) antennas, one of which transmits and two (2) of which receive.

    d. Each antenna is approximately seventy-two (72) inches high by twelve

    (12) inches wide by four (4) inches deep.

   e. The facility will transmit and receive at frequencies from 1945.2 to 1949.8 MHz.

   f. The maximum total effective radiated power transmitted from all the antennas on all the Applicant's operating frequencies at this site is less than 1200 watts at full power with all channels active.

15. The Applicant has submitted all material in compliance with Bylaw Sections 125-27 and 125-46.
16. By incorporating/referencing original view shed analysis, the Applicant has met, to the Board's satisfaction, the requirements of Bylaw Section 125-27E.(3)(a)(1).
17. The Applicant has submitted a copy of a valid FCC license to operate the facility for the specific use and intensity of use.
18. The Applicant's proposal does not entail additional disturbance of wetlands or buffer areas, so a determination of applicability from the Harvard Conservation Commission, per Bylaw Section 125-27E.(9), is not required.
19. While the Applicant has not submitted copies of a valid lease with the tower owner or a sublease with the leased area owner, establishing the right to operate the facility on the site for at least the term of the Permit. The Applicant will provide such to the Town Clerk, the Board, and Building Commissioner, prior to issuance of a Building Permit.

**Conditions and Limitations on Exercise of Special Permit**

The following conditions and limitations shall run with this Permit. They may be altered only by a Application to this Board to modify the Permit, an Application for a new Special Permit, or if such alteration(s) is determined to be minor and meet the following requirements, in which event they may be altered only by the written and recorded consent of four (4) of a five (5) member Board, upon a vote taken at an open meeting, and then only if:

   i) the change is consistent with the Findings above.
   ii) the change does not reduce a requirement of the Bylaw.
   iii) the change does not prejudice the interests of anyone entitled to notice of the original Hearing on the Permit.

1. The center point of the Special Permit holder's antenna on the tower shall be located no more than eighty-eight (88) feet above ground level, as measured from the existing ground level at the base of the tower. No point on the tower, its appurtenant structures, antennas, or other components shall be more than a hundred feet above ground level as measured from the existing ground level at the base of the tower. The transmitting and receiving antennas shall be supported on a structure, which is an equilateral triangle of base dimension approximately

ten (10) feet., mounted horizontally and centered on the monopole support. Each side of the triangular structure shall comprise one antenna with transmitting capability and two (2) antennas with receiving capability. Each antenna shall have the be approximately seventy-two (72) inches high by twelve (12) inches wide by four (4) inches deep. The facility transceiver shall operate at frequencies between 1945.2 and 1949.8 MHz, with a maximum total effective radiated power less of than 2000 watts at full power with all channels active.

2. The antennas shall be camouflaged by placing them within, and without protrusion beyond, the "branches" of the existing tree tower.

3. The antennas shall be painted green, corresponding to Sherwin Williams Rainforest #4071, to match the color of the "needles" on the stealth tree.

4. The cleared area containing the facility shall continue to be secured by a wooden painted stockade type fence no less than six (6) feet and no greater than eight (8) feet in height. The fence and associated hardware shall be painted the color "Charleston Green", that is, a mixture of fifty percent (50%) black and fifty percent (50 %) "Hunter Green" paint, or an acceptable agreed upon substitute. Cabinets shall be on existing concrete pad, and be no taller than six (6) feet.

5. No Building Permit to construct the Applicant's part of the facility shall be granted, nor shall any work at the site related to the construction/installation of the Applicant's equipment be begun, until the Board has provided the Building Commissioner with written confirmation that the Special Permit holder has complied with the provisions of this paragraph.

    a. The Grantee shall provide the Planning Board with a bond as required by Bylaw Section 125-27H.(2) in a form acceptable to the Board. The Bond shall provide security in any amount not less than $25,000 to assure the Special Permit holder's compliance with its obligations in the event that the holder ceases to use the tower or any part thereof, and shall specifically state that the obligation is to remove all towers or parts thereof owned by the Permit holder, and all accessory structures so owned, and to return the property to substantially the same condition as it was in prior to the erection of the tower, except for facilities not owned by Southwestern Bell Mobile Systems, LLC, its successors and assigns. The bond shall state that the bond shall not expire until one year and a day after Southwestern Bell Mobile Systems, LLC, its successors and assigns have ceased to use the tower and that the bonding company shall have no right to cancel the bond during the term of the bond.

6. No obstruction or non-emergency lighting is permitted on the tower. Should the Applicant incorporate lighting into its facility in the future, any such lighting must be motion-activated, with a full cut off feature.

7. The Grantee shall file with the Building Commissioner and the Board annual certification demonstrating continuing compliance with the standards of the Federal Communications Commission, and the American National Standards Institute.

8. The Grantee shall provide prior written notice to the Building Commissioner and the Board in the event of a change or increase of use of the tower or the Grantee's facilities on and at the tower, change of Grantee, or cessation of use on and at the tower, or any portion thereof. Any change in use, or increase in the intensity of use of the tower, or any portion thereof, shall require a new Special Permit.

9. The Grantee shall construct and maintain its facilities on the tower and ground in accordance with the screening approved by the Board in this Permit and previously granted Special Permits for this Site.

10. A sign shall be limited to approximately twelve (12) inches by twelve (12) inches in size, posted over the door to the equipment shelter, citing site designation information and a telephone number for twenty-four (24) hours per day emergency contact. (A "No Trespassing" sign is to be posted at the gated entrance to the secured area containing the tower and equipment shelter.)

11. No additional land shall be cleared in relation to the construction of Grantee's facilities.

12. Maximum acoustical noise levels emitting as a result of the new equipment cabinets under full load conditions will be 50db(A) at a distance of three (3) meters and 40db(A) at a distance of nine (9) meters.

13. The term of the Permit is for five (5) years from the last date of filing with the Town Clerk. All provisions of the Permit shall be binding on the Grantee, its successors, or assigns.

14. The Grantee is required to remove all its installation(s) on the tower, tower parts, and all related accessory structures when there is a cessation of use for a period of at least one year, and/or one year following expiration of the Permit, unless renewed.

    The Grantee is further required to return the property to substantially the same condition as it was in prior to the erection of the tower and all related facilities.

    The Grantee shall have the right to remove the tower if it is the last permitted user of the tower.

15. The existing driveway is sufficient to accommodate anticipated traffic by tower/facility owners and emergency equipment.

16. The Grantee shall furnish current actual cost information for its installation and ground equipment in a form satisfactory to the Board and Board of Assessors, for the purposes of tax assessment. The value of Site improvements and structures, including the antennas and equipment, shall be included.

17. Placement of Grantee's antennas on the tower shall not disturb the required "stealth" appearance of the tower.

18. A key shall be supplied for the lock box to the Fire Department and box replacement(s) shall have key(s) likewise circulated to ensure access for emergency services.

19. Grantee must comply with all conditions of this Permit prior to commencement of operation.

By a vote of 5 to 0, the Special Permit and site plan approval for the construction and use of a wireless communications facility are granted subject to the conditions and limitations contained herein.

December 15, 2003

_____
Timothy Clark, Chairman

_____
Timothy Arnold, Vice Chairman

_____
Mary Essary, Clerk

_____
Marc Sevigny

_____
Eric Nestler

(Members of a five-member Board)

This decision is not valid until after it has been certified with respect to Appeal by the Harvard Town Clerk, as provided in MGL, Chapter 40A, Section 9, and a copy as certified has been recorded in the Worcester Registry of Deeds.

An Appeal of this decision may be made pursuant to MGL, Chapter 40A, Section 17, within twenty (20) days after this decision is filed with the Town Clerk.

(Southwestern Bell Mobile Systems, LLC; 47 Poor Farm Road)

Town Clerk
True Copy Attest
_____

⚖JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Southwestern Bell Mobile Systems, LLC
d/b/a Cingular Wireless

**DEFENDANTS** Eric Nestler, Mary Essary, Timothy Clark, Marc Sevigny and Timothy Arnold, as they are now or formerly the Members of and constitute the Planning Board of the Town of Harvard, Worcester County, Massachusetts

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed __Worcester__
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Louis N. Levine and F. Alex Parra
D'AGOSTINE, LEVINE, PARRA & NETBURN, P.C.
268 Main Street, P. O. Box 2223
Acton, MA 01720    (978) 263-7777

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med. Malpractice | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  |  |  | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract |  | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability |  | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
|  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) |  |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 740 Railway Labor Act |  |  |
| ☐ 240 Torts to Land |  | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights |  | ☒ 890 Other Statutory Actions |
|  |  | ☐ 555 Prison Condition |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

47 U.S.C. § 332(c)(7)(B)(v)
Plaintiff is adversely affected by decision of the Defendant Planning Board conditioning the issuance of a special permit to co-locate on an existing wireless telecommunications tower.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 1/8/04

SIGNATURE OF ATTORNEY OF RECORD
F. Alex Parra

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**04-40004**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Southwestern Bell Mobile Systems, LLC d/b/a Cingular Wireless v. Eric Nestler

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   __ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   X  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   __ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   __ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   __ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

   YES    NO

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

   YES    NO

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

   YES    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

   YES    NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

   YES    NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

      EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

      EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Louis N. Levine and F. Alex Parra
ADDRESS D'AGOSTINE, LEVINE, PARRA & NETBURN, P.C., 268 Main St., P.O. Box 2223,
TELEPHONE NO.  (978) 263-7777                                               Acton, MA  01720

(Cover sheet local.wpd - 11/27/00)